IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JUNE A. PATTON, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | Civil Action No. 1:12-921-GMS |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff June A. Patton ("Patton") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on July 11, 2006, pursuant to Titles II and XVI of the Social Security Act. (D.I. 11 at 190–200.) The Social Security Administration ("SSA") denied Patton's applications initially and upon reconsideration. (*Id.* at 121–28, 133–42.) Patton requested a rehearing before an Administrative Law Judge ("ALJ"), which took place on July 23, 2008. (*Id.* at 34–63). On March 23, 2009, the ALJ, Barbara K. Powell, issued a written decision denying Patton's DIB and SSI claims. (*Id.* at 102–16.) Subsequently, the Appeals Council vacated the ALJ's decision and remanded Patton's claims for further consideration. (*Id.* at 119.) A supplemental hearing occurred on September 27, 2010. (*Id.* at 66.) On October 20, 2010, ALJ Powell issued a written decision once again denying Patton's DIB and SSI claims. (*Id.* at 13–27.) Subsequently, the Appeals Council denied Patton's request for review. (*Id.* at 1–5.)

On July 18, 2012, Patton filed this action against defendant Michael J. Astrue, former Commissioner of Social Security ("the Commissioner"),[1] for a review of the final decision denying her DIB and SSI applications. (D.I. 1.) Presently before the court are the parties' cross-motions for summary judgment. (D.I. 14; D.I. 19.) For the reasons that follow, the court will: (1) grant Patton's motion for summary judgment; and (2) deny the Commissioner's motion for summary judgment.

## II. BACKGROUND

Patton was born on June 25, 1967. (D.I. 11 at 243.) Patton alleged disability due to depression, anxiety, a heart condition, and chest pain. (*Id.* at 255.) Patton's alleged onset date of disability is January 1, 2006. (*Id.* at 13.)

### A. Physical Impairments

On February 3, 2007, Dr. Irwin L. Lifrak performed a consultative examination on Patton at the request of the State Disability Determination Services. (*Id.* at 466.) Dr. Lifrak noted Patton walked with a limp favoring her left side. (*Id.* at 468.) In addition, Dr. Lifrak found a limited range of motion in both her knees and hips as well as in the lumbosacral region. (*Id.* at 469.) Dr. Lifrak diagnosed Patton with degenerative joint disease of the bilateral knees and potential disc damage. (*Id.*)

On May 30, 2007, Dr. Richard D'Alonzo examined Patton with regards to Patton's complaints of bilateral knee pain. (D.I. 12 at 713.) Dr. D'Alonzo found crepitation in Patton's knees and diagnosed her with mild tracking of the patella with subluxation and chrondromalacia.

---

[1] Carolyn W. Colvin replaced Michael J. Astrue on February 13, 2013, after Patton initiated this action. Although pursuant to Federal Rule of Civil Procedure 25, Carolyn W. Colvin should be substituted for Michael J. Astrue, pursuant to 42 U.S.C. § 405(g), no further action is necessary to continue this action.

(*Id.*) Dr. D'Alonzo remarked that Patton was not a good surgical candidate due to her weight, and instead recommended a diet program and strengthening exercises. (*Id.*)

Dr. James Rubano, an orthopedic specialist, examined Patton from 2007 to 2009. (*Id.* at 709–16.) In response to Patton's complaints of bilateral knee pain, Dr. Rubano treated her with knee braces, physical therapy, and cortisone injections. (*Id.*) An MRI on April 28, 2009, showed evidence of patellar degeneration, and Dr. Rubano's overall impression was bilateral knee arthritis. (D.I. 11 at 16, D.I. 12 at 817, 821–25.) On September 15, 2009, Dr. Brian Brice performed a consultative examination on Patton at the request of the State Disability Determination Services. (D.I. 12 at 817–18.) Patton reported having difficulty with climbing stairs, carrying groceries and "walking over a block." (*Id.*) Furthermore, Patton related that she was using a single-point cane for stairs. (*Id.*) Dr. Brice's impression was a history chronic bilateral patellar chrondromalacia with chronic pain. (*Id.*) In October 2009, Patton injured her foot, however, an X-Ray showed no acute fracture or dislocation. (*Id.* at 971–91.)

On July 14, 2010, Patton underwent surgery for posterior tibial tendon dysfunction. (*Id.* at 918.) Furthermore, a lumbar spine MRI conducted on September 10, 2010, demonstrated underlying scoliosis and diffuse spondyltic changes with lateral extension of disc bulge towards the neural foramina, particularly at the L3-4 and L4-5 levels. (*Id.* at 971–91.)

Patton is five feet, three inches tall and, at the time of the 2010 supplemental hearing, weighed 180 pounds. (D.I. 11 at 17.) This equates with a Body Mass Index (BMI) of 31.9, which is consistent with obesity. (*Id.*) The ALJ considered the additional and cumulative effects of Patton's obesity in assessing her other impairments. (*Id.*)

3

## B. Mental Impairments

Patton has a history of panic attacks and headaches beginning in December 2004. (*Id.* at 367–86.) On June 26, 2006, Patton presented to the Christiana Care Health Services emergency department with suicide ideation and symptoms of depression and anxiety due to her boyfriend leaving. (*Id.* at 445–53.) Patton agreed to attend a partial hospitalization outpatient program. (*Id.* at 453.)

On August 29, 2006, Patton sought treatment for her mental health impairments at Connections CSP, Inc., where she began seeing Chuck Chaney, a nurse therapist.[2] (D.I. 12 at 529.) Mr. Chaney assessed Patton with a GAF score of 50 and diagnosed her with recurrent depression.[3] (*Id.*) Mr. Chaney's treatment records demonstrate that Patton suffers from intermittent exacerbations of symptoms due to situational family stressors. (*Id.* 514–40, 762–86.) Mr. Chaney's treatment notes for the remainder of 2006 indicate Patton's increased anxiety, however, they also demonstrate she responded well to medication. (*Id.* at 515.)

Dr. Ramnik Singh examined Patton in January 2007. (D.I. 11 at 461.) Dr. Singh diagnosed Patton with major depressive disorder and found she had "moderate" limitations in all areas[4] except for a finding of no limitation in deterioration of personal habits. (*Id.* at 464–65.)

---

[2] Mr. Chaney's qualifications include: MSN, APRN, CNS, and BC. (D.I. 12 at 529.)

[3] Throughout her decision, the ALJ mistakenly reported Mr. Chaney's assigned GAF Score as 60. GAF stands for "Global Assessment of Functioning"; it is a statistical tool used by the healthcare providers to measure a person's ability to function. The scale ranges from 1 to 100, in increasing ability to function. A score of 50 indicates: "Serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000). A score of 60 indicates: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id.*

[4] Areas included: ability to relate to other people, perform activities of daily living, constriction of interests, comprehend and follow instructions, perform work requiring frequent contact with others, perform work where contact with others would be minimal, perform simple or complex tasks, and perform repetitive or varied tasks. (D.I. 11 at 464–65.) "Moderate" is defined as "an impairment which affects but does not preclude ability to function." (*Id.*)

Patton continued to struggle with psychosocial stressors from 2007 to 2009. (D.I. 12 at 775.) Mr. Chaney's treatment notes from March 2007 indicate irritability, agitation, and mood instability. (*Id.* at 775.) Mr. Chaney described Patton's mood as stable and normalized in May 2007, though, Patton experienced a recurrence of depression and flat affect in June 2007. (*Id.* at 768, 537.) In November 2007, Patton returned to Connections, after being unable to attend in the interim due to insurance issues, and she presented as "[v]ery distressed." (*Id.* at 768.) Patton continued to struggle with depression and anxiety throughout 2008 and 2009, however, Mr. Chaney often noted that Patton was "doing well" and "dealing with the stress quite appropriately." (*Id.* at 763–64.) Mr. Chaney reported in May 2009 that Patton had been noncompliant in keeping her appointments but generally faithful in taking her medication. (*Id.* at 795.) Mr. Chaney's follow-up notes in October 2009 reveal that Patton was "mildly melancholy" and overwhelmed with issues due to her son. (*Id.* at 901.) Additionally, in November 2009, Patton experienced an episode of increased depression and anxiety. (*Id.* at 901.)

Mr. Chaney completed a "Medical Source Statement" on Patton's behalf in October 2008. (*Id.* at 787–92.) Mr. Chaney concluded that Patton had "poor" or no ability in the areas of completing a normal workday and work week without psychologically based symptoms, accepting instructions and responding appropriately to criticism from supervisors, dealing with normal work stresses, and dealing with the stress of semiskilled and skilled work; a "fair" ability to maintain attention for two-hour segments, maintain regular attendance and be punctual within customary work tolerances, make simple work-related decisions, understand remember, and carry out detailed instructions, set realistic goals or make plans independently of others; and a "good" ability to interact appropriately with the general public, maintain socially acceptable

behavior, and adhere to basic standards of neatness and cleanliness.[5] (*Id.*) Furthermore, Mr. Chaney stated that Patton had "moderate" restrictions in daily living and would be absent from work "[m]ore than three times a month." (*Id.*)

## C. The ALJ's Findings

On October 20, 2010, the ALJ concluded that Patton was not disabled. (D.I. 11 at 27.) At Step One of the sequential evaluation process, Patton was not found to have engaged in substantial gainful activity since January 1, 2006, the alleged onset date. (*Id.* at 15.) At Step Two, the ALJ determined Patton had the following severe impairments: degenerative joint disease, degenerative disc disease, bilateral pes planus foot deformity, depression, anxiety, and obesity. (*Id.*)

At Step Three, the ALJ determined Patton did not have an impairment or combination of impairments that met one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 18.) According to the ALJ, Patton's medically determinable mental impairments of anxiety and depression caused a mild to moderate limitation in her ability to perform basic mental work. (*Id.*) In making this evaluation, the ALJ considered four broad functional areas:[6] (1) daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) decompensation. (*Id.*) The ALJ determined Patton had a "mild" restriction in activities of daily living, "moderate" difficulties in social functioning and concentration, persistence or pace, and no extended periods of decompensation. (*Id.* at 18–19.) Furthermore, the ALJ found that Patton had the residual functional capacity ("RFC") to:

---

[5] "Poor" is defined as "no useful ability;" "Fair" is defined as "seriously limited, but not precluded;" and "Good" is defined as "limited but satisfactory." (D.I. 12 at 789.)

[6] The four broad functional areas are found in the disability regulations for evaluating mental disorders and section 12.00C of the Listing of Impairment. (D.I. 11 at 19; 20 C.F.R. § 404, subpt. P, app. 1.) They are known as the "paragraph B" criteria. (D.I. 11 at 19.)

6

perform a range of sedentary work...with lifting and/or carrying 10 pounds, standing and/or walking in excess of two hours but less than six hours in an eight-hour workday, sitting six hours, with a sit/stand option, occasional pushing/pulling with the lower extremities, occasional use of cane and crutches, occasional postural activities, no hazards such as dangerous heights or machinery, no ladders or scaffolds, no concentrated exposure to temperature extremes, and is limited to simple, routine, unskilled work with less than occasional interaction with the general public and supervisors and would have difficulty accepting criticism from supervisors.

(*Id.* at 19.) In forming the RFC, the ALJ follows a two-step process: (1) Determining whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain, and (2) Evaluating the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. (*See Id.* at 20.)

At Steps Four and Five, the ALJ found that Patton was unable to perform any past relevant work; nonetheless, there were a significant number of jobs in the national economy that Patton could perform. (*Id.* at 26.) Relying on the Vocational Expert's ("VE") testimony, the ALJ concluded that Patton could serve as a table worker, a final assembler, or a bench hand. (*Id.* at 27.) Thus, the ALJ concluded that Patton was not disabled from January 1, 2006, through October 20, 2010. (*Id.*)

In reaching her conclusion, the ALJ assigned varying weight to Patton's medical sources. The ALJ assigned significant weight to the opinions of Dr. Lifrak, Dr. Brice, and Dr. Singh, as they personally examined Patton and their opinions were based on familiarity with the Social Security Rules and Regulations. (*Id.* at 23.) Moreover, the ALJ stated these opinions were supported by medically acceptable clinical and laboratory findings and were "consistent with the

record when viewed in its entirety, including Mr. Chaney's treatment records showing a GAF rating of 60."[7] (*Id.*)

The ALJ did not afford Mr. Chaney's opinion significant weight. (*Id.* at 24.) Although Mr. Chaney is not an "acceptable medical source" as defined at 20 CFR 404.1513(a), 416.913(a), and SSR 06-03p, his opinion was still weighed as evidence in accordance with 20 CFR 404.1513(d), 416.913(d). (*Id.*) According to the ALJ, Mr. Chaney's Medical Source Statement was "inconsistent with the residual functional capacity as determined, as it [was] not supported by [Patton's] GAF assessment of 60[8] by not only Mr. Chaney but also Dr. Singh and [was] inconsistent with the treatment records in the exhibit file which show non-compliance despite improvement with medications and psychotherapy." (*Id.*) The ALJ determined there was no basis for Mr. Chaney's assessment of a moderate restriction in activities of daily living, and furthermore, that his reference to a history of suicide attempts was merely based on Patton's subjective statements. (*Id.*) Although the ALJ did not assign significant weight to Mr. Chaney's opinion that Patton would likely miss work more than three times a month, the ALJ accepted his opinion that Patton would not be precluded from maintaining attention for two-hour segments, maintaining regular attendance, being punctual within customary work tolerances, and making simple work-related decisions. (*Id.*)

## III. STANDARD OF REVIEW

### A. The ALJ's Decision

A reviewing court must uphold an ALJ's decision if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "Where the ALJ's findings of fact are supported by substantial evidence," the court is "bound by those findings, even if . . . [it] would have decided the factual

---

[7] Mr. Chaney's assessed GAF score was actually 50. (D.I. 12 at 529.)
[8] *See supra* note 7.

issue differently." *Fargonoli v. Massanari*, 247 F.3d 34, 38 (3d. Cir. 2001). "Substantial evidence" means "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The inquiry is not whether the reviewing court would have made the same determination but, rather, whether the ALJ's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). "Overall this test is deferential, and we grant similar deference to agency inferences from fact if those inferences are supported by substantial evidence, even where this court acting de novo might have reached a different result." *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In Social Security cases, this substantial evidence standard applies to motions for summary judgment. *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d. Cir. 1988).

## IV. DISCUSSION

Patton challenges the ALJ's decision on three grounds. First, Patton claims the ALJ improperly rejected Mr. Chaney's Medical Source Statement. Second, Patton claims the ALJ failed to address specific limitations in the RFC with respect to her assessed sit/stand option. Third, Patton claims the ALJ posed an incomplete hypothetical question to the VE. Patton requests reversal of the ALJ's decision with an award of benefits.

### A. Applicable Standards for Determining Disability

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for DIB, the

9

claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131. In determining whether a person is disabled, the ALJ performs a sequential five-step analysis. *See* 20 C.F.R. § 404.1520. The ALJ, the reviewing Appeals Council, and the Commissioner evaluate each case according to this five-step process until a finding of "disabled" or "not disabled" is obtained. *See* 20 C.F.R. § 404.1520(a). The process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, *and* has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled." If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he or she is capable of performing other work in the national economy. If he or she is incapable, a finding of disability will be entered. Conversely if the claimant can perform other work, he will be found "not disabled."

*Cunningham v. Apfel,* No. 00-693-GMS, 2001 WL 1568708, at *4 (D. Del. Dec. 7, 2001) (paraphrasing the five-step process for determining disability); *see also Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir. 1999).

The disability determination analysis involves a shifting burden of proof. *See Wallace v. Sec'y of Health & Human Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the claimant bears the burden of proof. *See Sykes v. Apfel,* 228 F.3d 259, 263 (3d

Cir. 2000). At step five, however, the burden shifts to the Commissioner to determine whether there is other substantial gainful employment in the national economy that the claimant can perform. *Id.* Substantial gainful employment is defined as "work that—(a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. When determining whether substantial gainful employment is available, the ALJ is not limited to consideration of the claimant's prior work, but may also consider any other substantial gainful activity that exists in the national economy. *See* 42 U.S.C. § 423(d)(1)(A), (2)(A); *see also Heckler v. Campbell*, 461 U.S. 458, 460 (1983).

### B. The ALJ's Credibility Determination of Mr. Chaney

The ALJ has the responsibility to conduct credibility determinations; therefore, the district court may only disturb the ALJ's determinations if they are not supported by substantial evidence. *Pysher v. Apfel*, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Moreover, the court may not reweigh the various medical opinions in the record; rather, the court's review is limited to determining if there is substantial evidence to support the ALJ's weighing of those opinions. *See Monsour Med. Ctr.*, 806 F.2d at 1190. The court, however, cannot resolve whether substantial evidence supports a credibility determination where the ALJ relied upon incorrect evidence and failed to indicate the role that evidence played in discounting the opinion. *See Jordan v. Colvin*, No. 4:14CV00493 JLH-JTK, 2015 WL 2237646, at *3 (E.D. Ark. May 12, 2015).

Patton argues the ALJ improperly rejected Mr. Chaney's Medical Source Statement. (D.I. 14-1 at 3.) Patton highlights that Mr. Chaney was her long-time treating therapist and that he based the Medical Source Statement upon professional observations. (*See* D.I. 14-1 at 6–16.) The Commissioner argues the ALJ was not required to accept Mr. Chaney's Medical Source

11

Statement as controlling because he is not an "acceptable medical source" and his opinion is inconsistent with the treatment record. (*See* D.I. 20 at 11–12.)

The ALJ's credibility determination of Mr. Chaney reflects an error. Throughout her decision, the ALJ erroneously reported that Mr. Chaney assigned Patton a GAF score of 60.[9] (*See generally* D.I. 11 at 23–24.) The record indicates a GAF score of 50. (D.I. 12 at 529.) This is a significant mistake because a GAF score of 50 indicates a more significant degree of impairment than one of 60. See *Sojourner v. Astrue*, No. CIV.A. 09-5662, 2010 WL 4008558, at *3 (E.D. Pa. Oct. 12, 2010) (holding that misreading a GAF score by four points was not a harmless error, since it could affect the RFC). According to the ALJ, Mr. Chaney's Medical Source Statement was "not supported by [Patton's] GAF assessment of 60 by not only Mr. Chaney but also Dr. Singh . . . ." (D.I. 11 at 24.) Not every mistake provides a basis for relief, but this error requires a remand because the ALJ's decision does not indicate the role Mr. Chaney's GAF score played in discrediting his opinion. See *Jordan*, 2015 WL 2237646, at *3. Mr. Chaney's GAF score was not the only basis for discounting his Medical Source Statement, therefore, the court cannot speculate about the role the mistake played in weighing the opinion; only the ALJ can reconcile the mistake. Thus, the court cannot determine whether substantial evidence supports the ALJ's decision to afford Mr. Chaney's opinion little weight.

On remand, the ALJ shall reconsider Mr. Chaney's opinion and assign appropriate weight to his conclusions.

---

[9] Patton only raised the issue with regards to Mr. Chaney's credibility determination, however, the court recognizes the ALJ used Mr. Chaney's erroneous GAF score throughout her decision. When affording Dr. Lifrak, Dr. Singh, and Dr. Brice "significant weight," the ALJ claimed their opinions were "consistent with the record when viewed in its entirety, including Mr. Chaney's treatment records showing a GAF rating of 60." (D.I. 11 at 23.)

C.  The Sit/Stand Option

Due to a claimant's specific physical limitations, an option to alternate between sitting and standing during the workday is sometimes required. Where a claimant's RFC allows for less than a full range of sedentary work, the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. *See* SSR 96-9p, 61 Fed. Reg. 34482 (July 2, 1996).[10]

Patton argues the ALJ failed to address specific limitations in the RFC with respect to her assessed sit/stand option. (D.I. 14-1 at 16.) The Commissioner asserts that any purported lack of clarity was harmless, claiming the VE specifically testified at the first hearing that the jobs of a 'table worker' and 'final assembler' could be performed with a sit/stand option "at will." (D.I. 20 at 13.)

Although the ALJ limited Patton to a sit/stand option, there is no further specificity as to how often she must shift between the two positions or whether it was "at will." (D.I. 11 at 19.) This does not comply with SSR 96–9p's requirement of specificity with regard to frequency. At the supplemental hearing, the VE claimed Patton could serve as a table worker, a final assembler, or a bench hand. (*Id.* at 90.) These jobs would afford a sit/stand option, however, there was no clarification concerning whether the sit/stand option was specifically limited or "at will." (*Id.* at 90.) Furthermore, contrary to the Commissioner's argument, the court finds the VE's testimony at the first hearing to be ambiguous as to whether a 'table worker' and 'final assembler' could be performed with an "at will" sit/stand option.[11] (*Id.* at 60–62.) The need to alternate sitting and standing at specific intervals could further erode the sedentary occupation base. On remand, the

---

[10] *Available at* http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-09-di-01.html.

[11] The ALJ did not ask whether a 'table worker' or 'final assembler' specifically had an "at will" sit/stand option. (D.I. 11 at 61–62.) The VE only specified that the positions of a 'mailroom clerk,' 'collator,' and 'photocopy machine operator' had an "at will" sit/stand option. (*Id.* at 60–61.)

13

ALJ should clarify the frequency of Patton's need to alternate sitting and standing, and whether this need is "at will."

## D. The Hypothetical Question

The hypothetical question presented to the VE must reflect all of the claimant's impairments supported by the record; a hypothetical question omitting credibly established limitations is defective and the answer provided cannot constitute substantial evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Patton argues the ALJ posed an incomplete hypothetical question to the VE by failing to convey (1) Mr. Chaney's assessed limitations, and (2) Patton's "moderate" limitation in maintaining concentration, persistence or pace. (D.I. 14-1 at 18–19.) The Commissioner argues the ALJ's hypothetical accounted for Patton's "moderate" limitations in concentration, persistence, or pace. (D.I. 20 at 13.) Although the court agrees with the Commissioner that the ALJ's hypothetical accounted for "moderate" limitations in concentration, persistence, or pace, in light of the court's decision to remand, the court makes no ruling on whether the ALJ posed an incomplete hypothetical question to the VE.

With regards to Patton's mental impairments, the ALJ limited her to "simple, routine, unskilled work with less than occasional interaction with the general public and supervisors and would have difficulty accepting criticism from supervisors." (*Id.* at 19.) The ALJ specifically explained in the decision that the restrictions set forth in the hypothetical question accounted for Patton's moderate limitations in maintaining concentration, persistence or pace. (D.I. 11 at 25.) The Third Circuit has held that a hypothetical question limiting the claimant to simple, routine tasks adequately accounted for moderate limitations in concentration, persistence or pace. *See McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008). "Unskilled work" consists of little

to no judgment and simple duties. *See* 20 C.F.R. §§ 404.1568(a), 416.968(a). Despite these findings, the court recognizes the ALJ's hypothetical question may be affected by Mr. Chaney's credibility determination on remand. In forming Patton's RFC, the ALJ stated, "In terms of the claimant's alleged mental problems, both Dr. Singh and Mr. Chaney assessed GAF scores of 60, indicative of borderline mild to moderate symptoms or limitations." (D.I. 11 at 22.) As previously discussed, the ALJ's reasoning reflects a mistake. Furthermore, at the supplemental hearing, the VE testified that no jobs would be available for Patton when encapsulating Mr. Chaney's assessed limitations. (D.I. 11 at 92–93.)

In accordance with the court's decision to remand, the ALJ shall reconsider Mr. Chaney's opinion and assign appropriate weight to his conclusions. Once the ALJ reconsiders the opinion, the ALJ shall reassess Patton's RFC and determine whether work exists that Patton can do. The ALJ may exercise discretion in determining whether to obtain updated medical evidence.

## V. CONCLUSION

For the foregoing reasons, the court grants Patton's motion for summary judgment and denies the Commissioner's motion for summary judgment. This matter is remanded for additional administrative proceedings.

Dated: July /0 , 2015

UNITED STATES DISTRICT COURT